**UNITED STATES of America, Appellee,**

**v.**

**Richard James STEIN, Appellant.**

**No. 73-3529.**

United States Court of Appeals,
Ninth Circuit.

June 25, 1974.

As Amended Sept. 20, 1974.

Morton H. Boren, Los Angeles, Cal., for appellant.

William D. Keller, U. S. Atty., Los Angeles, Cal., for appellee.

## OPINION AND ORDER.

Before BARNES and HUFSTEDLER, Circuit Judges, and ENRIGHT,* District Judge.

BARNES, Circuit Judge:

This is an appeal from a judgment of conviction entered after a jury trial on an eleven count indictment charging appellant with violation of the mail fraud statute, 18 U.S.C. § 1341. Appellant was found guilty on all eleven counts and sentenced to five years on each count, each to run concurrently with the others, sentence suspended and five years probation granted, with ninety days in confinement.

The indictment charged appellant with having devised a scheme to defraud the American Express Company and the Diner's Club by fraudulently applying for credit cards; and after receiving the credit cards, having fraudulently used these credit cards to purchase goods and services of approximately $11,000.00.

Appellant contends on appeal that the recent Supreme Court decision in United States v. Maze, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603, makes 18 U.S.C. § 1341 inapplicable to his conduct in the case at hand. Further, he contends that even if we are to find the mail fraud statute applicable, the evidence introduced at trial was insufficient to show a violation of 18 U.S.C. § 1341.

I. *Applicability of 18 U.S.C. § 1341.*

On September 29, 1970, appellant mailed an application for a credit card to American Express Company in Phoenix, Arizona. This application contained representations concerning credit references, residence and employment. A credit card was then mailed by American Express to the appellant on November 9, 1970.

A similar application was mailed to the Diner's Club on December 15, 1970, and the Diner's Club mailed a credit card to the appellant on December 17, 1970. It was alleged in the indictment and testimony given at trial that the representations made by the appellant in these applications were false and misleading.

Appellant charged amounts in excess of $4,800.00 on the American Express Card, including a considerable portion charged after the May, 1971 statement was mailed to appellant indicating that the account had been cancelled. Likewise a balance due in excess of $6,700.00 was shown on appellant's Diner's Club account, of which a number of charges occurred after June 21, 1971, the date on which this credit card was cancelled.

Counts I through III of the eleven count indictment concerned defendant's applications to the companies and their mailing to appellant of the credit cards. Counts IV through XI concerned invoices executed by appellant and mailed by various retail establishments to Diner's Club on dates in July and August of 1971, even though the Diner's Club credit had been cancelled on June 21, 1971. A jury returned a verdict of guilty on all eleven counts on November 1, 1973. A timely appeal was filed.

The mail fraud statute reads in pertinent part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do . . . knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any [matter or thing whatever to be sent or delivered by the Postal Service] shall be fined not

---

* Honorable William B. Enright, United States District Judge, Southern District of California, sitting by designation.

more than $1000 or imprisoned not more than five years, or both."

18 U.S.C. § 1341.

The Supreme Court has emphasized that section 1341 is not designed to reach all frauds "but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." Kann v. United States, 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944) as cited in United States v. Kelem, 416 F.2d 346, 347 (9th Cir. 1969).

Recently, the type of credit card fraud not intended to be reached by section 1341 was specifically described in United States v. Maze, supra. In Maze the Court limited the applicability of the mail fraud statute by holding it inapplicable to a case where one individual transacts a number of purchases with a stolen credit card belonging to another, and the only mailings that took place were directed toward adjusting the accounts between the victims of the fraud.

In Maze, the defendant stole from his friend Meredith a BankAmericard in Louisville, Kentucky, and embarked on a cross country junket, ultimately ending up in Southern California, obtaining food and lodging at motels located in California, Florida and Louisiana, by signing his friend's name. In holding the mail fraud statute inapplicable, the Court found that the mailings did not play a significant part in executing the fraud but that:

". . . the mailings here were directed to end of adjusting accounts between the motel proprietor, the Louisville Bank, and Meredith, all of whom had to a greater or lesser degree been the victims of respondent's scheme. Respondent's scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss." Id. 414 U.S. at 402, 94 S.Ct. at 649.

To conclude Maze requires the mail fraud statute's inapplicability to all fraudulent credit card cases would be too broad an interpretation of the Court's holding, and in our opinion incorrect. As the Chief Justice states in his dissent:

"The decision of the Court in this case should be viewed as limited to the narrow facts of Maze's criminal adventures on which the Court places so heavy a reliance, and to the Court's seeming desire not to flood the federal courts with a multitude of prosecutions for relatively minor acts of credit card misrepresentation considered as more appropriately the business of the States. The Court of Appeals, whose judgment is today affirmed, was careful to state that '[w]e do not hold that the fraudulent use of a credit card can never constitute a violation of the mail fraud statute.' United States v. Maze, 468 F.2d 529, 536 (CA6 1972)." 414 U.S. at 407, 94 S.Ct. at 652. (Burger, C. J., dissenting).

■ Contrary to the appellant's contentions, we see an obvious distinction between the facts in Maze and the facts in this case, with reference to Counts I, II, and III. The fraud in Maze reached the fruition prior to any mailings, where as here in Counts I to III, the mailings of the applications were an integral part in the creation of the fraud.

## II. Sufficiency of the Evidence.

■ In reviewing the sufficiency of the evidence, we are limited to ascertaining whether there was sufficient evidence of false or fraudulent pretenses, representations or promises that a jury of reasonable persons could infer that the appellant intentionally engaged in a scheme to defraud and that, in at least one instance, he personally made use of the mailing of the original applications to accomplish his purpose. United States v. Larsen, 441 F.2d 512, 513 (9th Cir. 1971); See Lustiger v. United States, 386 F.2d 132, 136 (9th Cir.

1967); Gold v. United States, 350 F.2d 953, 956 (8th Cir. 1965). *Cf.* United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969). We are required to consider the evidence and all reasonable inferences therefrom in a light most favorable to the government. Lustiger v. United States, *supra* 386 F.2d at 134.

There was evidence that appellant falsely misrepresented items on his applications for the credit cards. For instance he stated that he resided at his address for 4½ years. The owner of the building testified appellant resided there only 1½ years. Appellant further represented he was the manager of Adourn Jewelry and had worked for the firm for 3½ years. Testimony showed that the firm was in existence for only one to two years, and that appellant was never the manager. Appellant's application represented he had prior credit accounts with May Finance Company, May Company, Golden West Furniture Company, and a loan with a specified local branch of Crocker National Bank. There was proof appellant had no prior account with May Finance Company, nor the May Company, that appellant never had a loan account with the branch of the bank listed in the application, although such a loan did exist with another branch. He told inspectors he had opened two bank accounts, but there was testimony he immediately drew most of the money out.

Postal inspectors testified regarding interviews with the appellant, in one of which appellant outlined the manner in which a fraudulent credit card scheme could be devised and carried out. One inspector testified appellant admitted, "I burned Diner's Club for $10,000." The other inspector's testimony concerned his questioning of appellant as to the representations in the credit card applications, and receiving bills from his transactions with the cards.

The evidence reflects that appellant supplied false information to obtain the credit cards, and through their use he later incurred the large sum of obligations which went unpaid. The jury could and did conclude that appellant intentionally engaged in this scheme to defraud. *See* United States v. Larsen, *supra.*

The convictions on Counts IV to XI, inclusive, are severally reversed. The convictions on Counts I, II and III, inclusive, are severally affirmed.